# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0043** (Cabell County 16-F-316)

**Aaron Miles,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Aaron Miles, by counsel Owen A. Reynolds, appeals the order of the Circuit Court of Cabell County, entered on October 3, 2017, denying his motion for a new trial and motion for post-verdict judgment of acquittal subsequent to his conviction of one count of second-degree murder; one count of murder of a child by a parent, guardian, or custodian; one count of death of a child by a parent, guardian, or custodian; two counts of child abuse causing bodily injury; two counts of child neglect creating a substantial risk of bodily injury; and one count of conspiracy to commit child abuse causing bodily injury. Pursuant to the circuit court's sentencing order entered on January 30, 2018, petitioner is sentenced to a term of imprisonment in the West Virginia State Penitentiary for life, without mercy, for his conviction of murder of a child by a parent, guardian, or custodian, together with various other sentences for the remaining convictions. Respondent State of West Virginia appears by counsel Scott E. Johnson.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Miles was the stepfather of Jayden, a three-year-old boy whom Mr. Miles and his wife, Mariya Jones, found unresponsive in the bathroom of their home after having left the boy alone. Paramedics transported Jayden to Cabell-Huntington Hospital, but determined he was dead by the time they arrived there. Jayden's autopsy identified an intestinal perforation, caused by blunt force trauma, which led to lethal septic shock. Mr. Miles and Ms. Jones were indicted on numerous charges that related to Jayden's death and the neglect of other children in the home. Both Mr. Miles and Ms. Jones were found guilty, after a jury trial, of most of the indicted charges, including murder of a child by a parent, guardian, or custodian, upon which count Mr. Miles was sentenced to a term of imprisonment for life in the West Virginia State Penitentiary, without mercy. On appeal, Mr. Miles asserts that the circuit court erred in nine respects: 1) failing to sever his trial from that of Ms. Jones; 2) failing to exclude gruesome photographs of Jayden's body; 3) failing to

1

allow the reading of the statement of an unavailable witness; 4) declining to instruct the jury to draw an adverse inference from the State's failure to call a material witness; 5) failing to give the co-defendants additional peremptory challenges; 6) allowing testimony, by a State's witness, concerning "child torture"; 7) allowing cumulative error affecting Mr. Miles' right to a fair trial; 8) denying Mr. Miles' motion for acquittal and renewed motion for acquittal; and 9) denying Mr. Miles motion for a new trial. We will discuss the standard of review applied to each assignment of error in turn.

We begin with Mr. Miles' first assignment of error, wherein he argues that the circuit court erred in "failing" to sever his trial from that of his co-defendant, though he did not seek that relief below. Rather, he argues that the circuit court erred in denying the motion to sever filed by Ms. Jones. Generally, "[t]his Court will not reverse a denial of a motion to sever properly joined defendants unless the petitioner demonstrates an abuse of discretion resulting in clear prejudice." Syl. Pt. 3, *State v. Boyd*, 238 W.Va. 420, 796 S.E.2d 207 (2017). We have additionally instructed that a circuit court should sever the trial of co-defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Syl. Pt. 5, *id.*, in part (emphasis added). The prejudice to Mr. Miles is evident, he argues, in that he and Ms. Jones were "forced to try a case against . . . each other, leading to unfair trials for both. . . ." This, he states, affected his theory of defense: that he was unaware of the extent of Jayden's injuries. We disagree that Mr. Miles was so prejudiced. As described in greater detail below, Jayden suffered trauma to a degree so shocking that no one living with him could credibly claim ignorance. More importantly, we stress that the potential prejudice to a co-defendant is evaluated in large measure on the admissibility of evidence as to each defendant. *See id.* at 432, 796 S.E.2d at 219. That is, is the evidence co-extensive? In this case, not only does Mr. Miles fail to identify evidence admissible as to his co-defendant but not as to him, but he acknowledges that his defense depended on the introduction of inflammatory text messages sent from Ms. Jones to her mother, wherein she described "beating" her son and expressed the possibility that she would "kill Jayden." There is no error in the circuit court's denial of Ms. Jones's motion to sever.

Next, Mr. Miles argues that postmortem photographs offered by the State were prejudicially gruesome. We have explained:

> Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

Syl. Pt. 10, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). Petitioner does not identify specific photographs, but instead generally assails the use of all images captured during Jayden's autopsy. The deputy chief medical examiner testified that, in addition to the fatal intestinal injury, she found numerous injuries in and on Jayden's body, in various stages of healing, depicted in the

photographs. These depictions included numerous scars and contusions on all areas of the body, two black eyes, an abrasion over the nose, a bruised jaw, several burns to Jayden's chest and hands and other areas, an inner-mouth injury, several subgaleal hemorrhages, a fractured rib, a leg muscle hardened from blunt force trauma, and a hemorrhage in the bowel area. This testimony, and thus the supporting photographic documentation, was important to the many charges relating to Jayden's abuse, and not just the murder charge that was based on the single, fatal blow. There was no error in the admission of the photographs.

Mr. Miles' third and fourth assignments of error concern the non-appearance of defense witness Greg Bailey, a friend Mr. Miles summoned to his home upon finding Jayden in the bathroom, and the circuit court's declining Mr. Miles' request for an adverse inference instruction when the State did not call Mr. Bailey. According to Mr. Miles, he served a subpoena at Mr. Bailey's residence, and the subpoena was accepted by Mr. Bailey's brother. Mr. Bailey did not appear at trial, and Mr. Miles moved for the introduction of the statement that Mr. Bailey gave to police officers during the investigation. The circuit court denied Mr. Miles' motion on the ground that Mr. Bailey was not an "unavailable" witness. Later, Mr. Miles asked the circuit court to instruct the jury "that the failure of the State to call [the available material witness] gives rise to the inference that had [the witness] testified, his/her testimony would have been adverse to the State's case." The circuit court refused to so instruct the jury.

In considering these third and fourth assignments of error, we begin with the premise that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 9, *State v. Whittaker*, 221 W. Va. 117, 650 S.E.2d 216 (2007) (citations omitted). We agree with the circuit court that Mr. Miles failed to show that Mr. Bailey was unavailable. Rule 804(a) of the West Virginia Rules of Evidence explains that a "declarant is considered unavailable" if, among other situations, a party has been unable to procure the declarant's trial attendance or testimony through reasonable means. We have explained that a party seeking a hearsay exemption under this standard must "show the unavailability of the witness by proving that they have made a good-faith effort to secure the declarant as a witness for trial by using substantial diligence in procuring the declarant's attendance (or testimony) by process or other reasonable means." Syl. Pt. 2, in part, *State v. Blankenship*, 198 W. Va. 290, 480 S.E.2d 178 (1996). Mr. Miles avers that he "tried for approximately two weeks to track down and subpoena" the witness, but he does not offer the date that the subpoena was served or upon what date Mr. Bailey was commanded to appear. Mr. Miles offers no information about any steps he took to procure Mr. Bailey's attendance when he failed to appear. On the penultimate day of trial, Mr. Miles did not seek the circuit court's assistance in procuring Mr. Bailey's attendance, but instead asked that the statement be admitted. Under these circumstances, we find no evidence that Mr. Miles used "substantial diligence" and we, thus, find no abuse of discretion in the circuit court's determination that Mr. Bailey was not unavailable.

Concerning the circuit court's subsequent refusal to give Mr. Miles' requested adverse inference instruction, we note that

"[a] trial court's refusal to give a requested instruction is reversible only if:
(1) the instruction is a correct statement of the law; (2) it is not substantially covered

in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense."

Syl. Pt. 2, *State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013)(citations omitted). The circuit court's refusal did not so impede Mr. Miles' defense. Mr. Bailey was known and available to both parties, and the State bore no special responsibility to offer this witness.

We turn to Mr. Miles' fifth assignment of error, that the circuit court erred in denying a motion, filed by Ms. Jones but not joined by Mr. Miles, to grant the co-defendants additional peremptory challenges. We are governed by this standard:

> When an accused, who is being tried jointly for a felony offense with co-defendants, seeks to avoid the sharing of six peremptory challenges, as provided under West Virginia Code § 62-3-8 (2014), *he or she must file a motion expressly requesting additional peremptory challenges* in accordance with Rule 24(b)(2) of the West Virginia Rules of Criminal Procedure. The trial court's ruling on a Rule 24(b)(2) motion shall be at its sole discretion.

Syl. Pt. 1, *State v. Gibbs*, 238 W. Va. 646, 797 S.E.2d 623 (2017)(emphasis added). The requirement that a defendant request additional challenges by motion is not subject to flexibility. Mr. Miles filed no such motion, and the circuit court did not abuse its discretion in granting no additional peremptory challenges.

In his sixth assignment of error, Mr. Miles argues that the circuit court erred in allowing Dr. Barbara Knox, a board-certified child abuse pediatrician from the University of Wisconsin School of Medicine and Public Health, to testify that Jayden was subjected to "child torture" as a form of child abuse. Dr. Knox further testified that the injuries from Jayden's abuse were so severe that both of the adults in the household would have been aware and would have participated. We have held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 9, *Whittaker* (citations omitted). Mr. Miles argues that the term "child torture" is not a widely-accepted medical diagnosis, and that the term itself is prejudicial. Thus, we also consider the circuit court's evaluation of the proffered testimony, for which the circuit court conducted a *Daubert*[1] hearing, as follows:

> In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have been tested; (b) whether the scientific theory has been subjected to peer

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

Syl. Pt. 2, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. den.*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994). We agree with the State that the evidence considered by the circuit court—that Dr. Knox published a peer-reviewed study on the subject, and Dr. Knox's uncontroverted testimony that "child torture" is a diagnosis accepted among pediatricians practicing in the care of abused children—satisfied the circuit court's gate-keeping responsibility.

In his seventh assignment of error, Mr. Miles asks the Court to find that the errors he describes, if individually harmless, cumulatively interfered with his right to a fair trial. The "cumulative error" doctrine provides that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 12, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163, (1995)(citations omitted). Having found no error, we necessarily find that the doctrine does not apply to the case before us.

At the conclusion of the State's case-in-chief, Mr. Miles moved for judgment of acquittal, and he later renewed that motion. The circuit court's denial of the same is the subject of Mr. Miles' eighth assignment of error. The evidence, he argues, was insufficient to sustain his conviction. We have explained:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *id*. Mr. Miles' challenge to the sufficiency of the evidence is grounded in large part on the testimony of his expert witness, Dr. John Fortunato, who testified that it was "conceivable" that Jayden's injury could have resulted from a blow to the back, but he thought it "a little unusual" that such a powerful blow could have been delivered without causing damage to Jayden's pancreas, which was intact. Nevertheless, Dr. Fortunato agreed that Jayden suffered long-term physical abuse, and he agreed that blunt force trauma would be "toward the top of the list" of the possible causes of Jayden's deadly perforation. Dr. Fortunato disputed that a patient would categorically exhibit emergent symptoms, and opined that the degree of symptoms apparent to an onlooker would vary. This was but a small part of the evidence considered by the jury. Both Dr. Knox and the deputy chief medical examiner testified that Jayden's intestinal perforation was most certainly caused by blunt force trauma. As the deputy chief medical examiner explained, that blow was likely delivered by a fist, boot, or other object as Jayden's body was pressed against a solid surface, such as a floor or a wall. This, together with testimony of a family friend who detailed his observation of Mr. Miles' and Ms. Jones's abuse of Jayden, was certainly a sufficient basis for Mr.

5

Miles' conviction.

Mr. Miles' final assignment of error addresses the circuit court's denial of his motion for a new trial. "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Inasmuch as Mr. Miles' argument in support of this assignment of error is dependent on the validity of the assignments of error addressed above, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison